```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION


GERALD BOYD,

          Petitioner,

vs.                                    Case No. 3:11-cv-67-J-37JRK

SECRETARY, DOC, et al.,

          Respondents.
_____
```

## ORDER

### I. Status

Petitioner Gerald Boyd initiated this action by filing a *pro se* Petition (Petition) (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition challenges a 2007 state court (Putnam County) conviction for trafficking in amphetamine (28 grams or more). Three grounds are raised in the Petition: (1) a Fourth Amendment violation due to the trial court's denial of a pre-trial motion to suppress; (2) a Sixth Amendment violation due to the ineffective assistance of counsel for failure to introduce at the suppression hearing the canine's track records to impeach the testimony of Officer Deloach regarding the canine's reliability; and (3) a Sixth Amendment violation due to the ineffective assistance of counsel for failure to argue at the suppression hearing that Petitioner's truck was equipped with daytime running lights (DRL) which come on whenever the engine is on.

Respondents filed a Response to Petition (Response) (Doc. #8) and an Appendix (Doc. #9).[1] Petitioner filed a Reply with Incorporated Memorandum of Law to Respondents' Response to Petition for Writ of Habeas Corpus (Doc. #14). See Order (Doc. #5). In addition, Petitioner filed the following: Petitioner's Supplemental Appendix (Doc. #15); Petitioner's Response with Incorporated Memorandum of Law to Respondents' Request for Summary Judgment and Dismissal (Doc. #16); and Notice of Supplemental Authority (Notice) (Doc. #19). Three grounds for habeas relief are raised, and the Court is mindful of its responsibility to address each ground, Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992); however, no evidentiary proceedings are required in this Court.[2]

## II.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state

---

[1] The Court hereinafter refers to the exhibits in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom right-hand corner of each page of the Exhibit. Otherwise, the page number on the particular document will be referenced.

[2] An evidentiary hearing was conducted in the state court on the motion to suppress. See Ex. 1 at 314-430.

court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts. Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption applies to the factual determinations of both trial and appellate courts. See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III. Timeliness

Respondents calculate that the Petition was timely filed. Response at 6-7. The Court accepts this calculation.

### IV. Ground One

Petitioner claims that the Fourth Amendment was violated when the trial court denied a pre-trial motion to suppress. In Defendant's Amended Motion to Suppress, he asserted that the search was illegal because (1) he was not committing a traffic violation because sunrise had already occurred and taillights were not required at the time of the traffic stop; (2) the detention was longer than necessary to issue a traffic citation; and (3) the drug dog was not certified by any agency or kennel for narcotics detection at the time of the search and there was no *prima facie* showing of the dog's reliability. Ex. 1 at 189-267. Based on these contentions, he sought the suppression of all evidence and

statements obtained by the police. Id. at 195-96. An evidentiary hearing was conducted by the trial court on the motion. Id. at 314-430. Captain Alisha Kuleski, Deputy Anton Boals, Detective John Merchant, and Detective Homer Deloach testified for the prosecution. Petitioner's mother, Barbara Brantley, was called by the defense. The court heard argument, and the motion to suppress was taken under advisement.

In its Order Denying Motion to Suppress Evidence, the trial court, in a detailed and thorough decision, set forth its reasoning for denying the motion to suppress. Ex. 1 at 271-76. First, the court noted that Petitioner was asserting that the traffic stop was illegal. Id. at 271. Next, the court referenced the violation cited in the traffic citation, id. at 282, a violation of Florida Statute 316.221, which provides:

> 1) Every motor vehicle, trailer, semi trailer, and pole trailer, and any other vehicle which is being drawn at the end of a combination of vehicles, shall be equipped with at least two tail lamps mounted on the rear, which when lighted as required in s. 316.217, shall emit a red light plainly visible from a distance of 1,000 feet to the rear, except that passenger cars and pickup trucks manufactured or assembled prior to January 1, 1972, which were originally equipped with only one tail lamp shall have at least one tail lamp. On a combination of vehicles, only the tail lamps on the rear most vehicle need actually be seen from the distance specified. On vehicles equipped with more than one tail lamp, the lamps shall be mounted on the same level and as widely spaced laterally as practicable. An object, material, or covering that alters that tail

> lamp's visibility from 1,000 feet may not be placed, displayed, installed, affixed, or applied over a tail lamp.
>
> 2) Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light and rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted. Dump trucks and vehicles having dump bodies are exempt from the requirements of this subsection.
>
> 3) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

Ex. 1 at 271-72.

In addition, the court cited Florida Statute 316.217(1)(a), which provides:

> 1) Every vehicle operated upon a highway within this state shall display lighted lamps and illuminating devices as here in respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, under the following conditions;
>
> (a) At any time from sunset to sunrise including the twilight hours. Twilight hours shall mean the time between sunset and full night or between full night and sunrise.

Ex. 1 at 272.

Recognizing that Petitioner was asserting that his stop was illegal because the sun had already come up at the time of his

traffic stop, the court explained that there was a case on point, and relying on that case, found there was probable cause for a traffic stop because Florida Statute 316.221(2) requires the tag light to be operational whenever the head lights are on, no matter what time of the day.  In support of its conclusion that the traffic stop in Petitioner's case was a legal stop, the court credited the testimony of Deputy Anton Boals:

> [H]e received a bolo (be on the lookout) for a silver Ford pick up that was hauling a truck and trailer without working tail lights around 7:57 A.M.  That bolo was based on a tip by an informant who allegedly saw the truck sometime after 7:00 A.M.  Deputy Boals testified that he saw the vehicle traveling in the opposite direction with the head lights on and no tail lights and turned around and made the stop at 8:04 A.M.  He approached the vehicle and asked for the Defendant's driver's license. He went to the back of the vehicle and re-inspected the tail lights asking the Defendant to take his foot of[f] the brakes.

Ex. 1 at 272-73.  The court found Deputy Boals had probable cause to stop Petitioner "regardless of whether it was shortly after sunrise[,]" as the officer saw the vehicle with its headlights on. Id. at 273.

The court also addressed Petitioner's claim that the delay in issuing the citation was well beyond the time necessary to complete the citation.  Id. at 273-75.  The court relied on the testimony of the officers and the exhibits in finding that the detention was not unreasonably delayed or unlawful.  The court made its findings of

fact and conclusions of law with respect to the assertion of unreasonable delay in issuing the citation:

> Deputy Boals testified that he stopped the vehicle at 8:04 A.M. and gave the Defendant the written citation at 8:20 A.M. Deputy Boals testified that during that time, he ran a check on the Defendant's license and inspected the Defendant's trailer lights at one point instructing the Defendant to take his foot of[f] the brake pedal. Assistant Supervisor of Communication Captain Kuleski, testified from dispatch records that the bolo was received at 7:57 A.M., the Defendant was stopped at 8:04 A.M., Detective Merchant arrived on the scene at 8:08 A.M., and Detective Deloach arrived on the scene with a drug sniffing dog at 8:18 A.M. Detective Merchant testified that at some point the Defendant's mother arrived at the scene.
>
> . . . .
>
> Deputy Boals testified that he was delayed when the Defendant did not take his foot off of the brake when he was instructed to. His further inspection of the trailer would have certainly caused a delay. Based on the testimony of Boals and Detective Merchant at the hearing, it is apparent to the Court that Deputy Boals was involved solely with the traffic issue and not part of any search. As Defendant's Exhibit Marked as C (the citation) shows, the citation was given to the Defendant at 8:20 A.M. Detective Deloach arrived on the scene with the drug sniffing dog at 8:18 A.M. prior to the citation being issued. Based on the testimony presented, a review [of] the events from 8:04 A.M. to 8:20 A.M., 16-minutes does not seem to be an unreasonable delay. Additionally, the "canine search" which was conducted by law enforcement personnel separate and apart from the Deputy, was initiated prior to the citation being issued. Thus the Court concludes that the detention under the circumstances was not unlawful.

Ex. 1 at 273-75.

With respect to Petitioner's third and last contention in the motion to suppress, the court relied on the testimony of Detective Deloach that the State of Florida does not mandate certification of the canine. Id. at 275. In addition, the court credited his testimony concerning the reliability of the canine, "allowing the Court to determine the canine detection provided probable cause for the search." Id.

The trial court denied the motion to suppress as to all three grounds. Id. at 275-76. Thereafter, Petitioner entered a nolo contendere plea, but reserved the right to appeal the denial of the motion to suppress. Id. at 433, 443-44. On direct appeal, Petitioner raised the following issue: "[t]he trial court erred in the denial of Appellant's Motion to Suppress Physical Evidence and Statements following an illegal traffic stop, seizure and a search conducted without probable cause when the drug detection dog was not certified and lacked a sufficient track record." Ex. 2 at i. Additionally, it was argued that the engagement of daytime running lamps (DRL) does not illuminate any rear lights on a vehicle, and the lights automatically engage when the vehicle is turned on, presenting a problem that it would be illegal to use DRL under the current interpretation of the law under Andrews v. State, 540 So.2d 210 (Fla. 4th DCA 1989). Id. at 15-16.

In its Answer Brief, the state countered that there is no requirement that a canine be certified to detect narcotics, only

that the canine be trained, and that the canine was properly trained in this instance. Ex. 3 at 4. In addition, with respect to the argument about daytime running lights and drivers being subjected to traffic stops based on these automatic daytime running lights, the state responded: "the argument is misplaced given that section 316.221 only addresses headlamps and auxiliary driving lamps, not DRL." Ex. 3 at 7-8. Petitioner replied, Ex. 4, and the Fifth District Court of Appeal affirmed per curiam on October 21, 2008. Ex. 5. The mandate issued on November 7, 2008. Ex. 6.

The Supreme Court of the United States recently explained: "[t]he Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones, 132 S.Ct. 945, 949 (2012). The Eleventh Circuit has recognized that even a brief stop of a motor vehicle by the police constitutes a Fourth Amendment seizure. United States v. Durham, No. 12-11583, 2012 WL 4757930, at *3 (11th Cir. Oct. 5, 2012) (per curiam) (not selected for publication in the Federal Reporter). However, a traffic stop is reasonable if the police have probable cause to believe a traffic violation occurred. United States v. Whitlock, No. 12-10989, 2012 WL 5065667, at *3 (11th Cir. Oct. 19, 2012) (per curiam) (not selected for publication in the Federal Reporter) (citation omitted).

Although the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects," including vehicles, from unreasonable searches and seizures, the Fourth Amendment itself does not have an exclusionary rule. Davis v. United States, 131 S.Ct. 2419, 2426 (2011). Indeed, exclusion is not an individual's constitutional right, and the prudential doctrine of exclusion is not meant to redress the injury to the individual caused by an unconstitutional search. Id. (citing Stone v. Powell, 428 U.S. 465, 486 (1976)). Instead, the exclusionary rule's purpose is to deter future Fourth Amendment violations by the police.

With this in mind, the Court will review ground one of the Petition. Respondents assert that Petitioner's claim is barred from consideration pursuant to Stone v. Powell, 428 U.S. 465 (1976). Response at 8, 12. Upon a thorough review of the record, the Court finds that Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. A pre-trial motion to suppress was filed, and a hearing was conducted on the motion to suppress, and the traffic officer, the canine officer, the detective, and the supervisor of the dispatch records testified. Additionally, Petitioner's mother testified. Exhibits were considered by the court. The trial court made essential findings of fact. See Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), cert. denied, 502 U.S. 898 (1991), and the appellate court affirmed the trial court's decision.

Upon review, the trial court determined it was a legal stop based on the fact that the officer saw the vehicle with its headlights on. Ex. 1 at 273. The court credited the testimony of Deputy Boals with respect to this finding. Id. Additionally, the court concluded that the State of Florida does not mandate certification of the canine to conduct narcotics searches, crediting the testimony of the canine officer Detective Deloach. Id. at 275. The court also credited the testimony of Detective Deloach concerning the reliability of the canine, finding it to be sufficient to make the determination that the canine detection provided probable cause for the search. Id.

Generally, following a stop, the investigation should be reasonably related in scope to the circumstances which justified the stop. United States v. Whitlock, at *4 (citing United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir.), cert. denied, 551 U.S. 1108 (2007)). In effect, the duration should be limited to the time necessary to effectuate the purpose of the stop, including prolonging the detention to investigate the driver's license and vehicle registration and to conduct a computer search. Id. (citation omitted). A Fourth Amendment violation would occur if the police undertake an unreasonably prolonged traffic stop and "conduct a dog sniff and uncover contraband[.]" Id. (citing Illinois v. Caballes, 543 U.S. 405, 407-08 (2005)). But,

> a dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and based on this

- 11 -

> principle, the Supreme Court has "rejected the notion that the shift in purpose from a lawful traffic stop into a drug investigation was unlawful because it was not supported by any reasonable suspicion."

Id. at *4 (citing Muehler v. Mena, 544 U.S. 93 (2005)).

Indeed, traffic stops of fourteen minutes, United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir.), cert. denied, 534 U.S. 830 (2001), to fifty minutes duration, United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988), cert. denied, 489 U.S. 1019 (1989), have been approved.  Rigid time limitations and bright-line rules have been rejected and "[r]easonableness is measured by examining the totality of he circumstances."  United States v. Purcell, 236 F.3d at 1279 (citation omitted).

Based on the record before the Court, the trial court took into account the totality of the circumstances presented during the traffic stop, as the court found it was not unreasonable for Deputy Boals to take sixteen minutes to conduct the stop under the circumstances presented to him.  Ex. 1 at 274-75.  Here, the trial court concluded that the officer's testimony was credible, finding the officer checked Petitioner's license, inspected the trailer lights, instructed Petitioner to take his foot off of the brake pedal, conducted an additional inspection of the trailer, and dealt with traffic issues during the stop.  Id.  And, of great import, the court found that the officer actually wrote the citation after the canine unit arrived.  Id.

Upon review, the issues presented in ground one, the legality of the traffic stop, the duration of the traffic stop, and the certification and reliability of the canine that conducted the search, are barred from this Court's consideration under <u>Stone v. Powell</u>. Ground one is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. The trial court made explicit findings on matters essential to the Fourth Amendment issue. The trial court denied the Fourth Amendment claim, and the appellate court affirmed. Under the principles of <u>Stone v. Powell</u>, federal habeas review of Petitioner's claim is precluded. See <u>Streets v. Sec'y Dep't of Corr.</u>, No. 8:10-cv-1131-T-33TGW, 2011 WL 3171263, at *12 (M.D. Fla. July 27, 2011) (finding "Stone bars federal habeas review" of a Fourth Amendment claim when "Florida clearly afforded [Petitioner] a full and fair opportunity to litigate" the claim). Thus, ground one, asserting a Fourth Amendment violation, is barred and will not be addressed by this Court.

## V.  Ground Two

In his second ground, Petitioner raises a Sixth Amendment claim contending he received the ineffective assistance of trial counsel based on counsel's failure to introduce at the suppression hearing the canine's track records to impeach the testimony of Officer Deloach regarding the canine's reliability. This claim was raised by Petitioner in his post-conviction motion, and rejected by

the trial court. The trial court, in considering the claim of ineffective assistance of counsel, recognized the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).

The court, in denying this ground, held:

> After a review, although it appears that there was no extensive challenge by Trial Counsel during the suppression hearing in regards to the drug dog's reliability and "track record", during cross examination, there was testimony brought out by the State, noting that the drug dog had been used several times in the past with apparent success in those cases. (See Collective **Appendix A**, Page 84, Transcript of Motion to Suppress Hearing held on September 11, 2007). Additional review of the Court file and Transcript of the Motion to Suppress hearing shows that in addition to the other compelling arguments pursued by Trial Counsel, the dog's certification was challenged extensively both in the written Motion and at the hearing. As noted in Watterhouse [sic], above, the Defendant is not entitled to perfect or error free Counsel, only to reasonably effective Counsel. With the evidence (although sparse) brought out that the drug dog had been used several times in the past with success, it could be concluded that Trial Counsel's strategy not to pursue an extensive challenge of the drug dog's track record may have been sound.
>
> Thus, the Court concludes that neither the first or the second prongs of the Strickland test above has been met. Thus, the Defendant's Amended Supplemental Claim is summarily denied.

Ex. 22 at 4. On August 24, 2010, the decision was per curiam affirmed by the Fifth District Court of Appeal.[3] Ex. 28. The mandate issued on October 8, 2010. Ex. 31.

Upon review, there was no unreasonable application of clearly established law in the state courts' decisions to reject the Strickland ineffectiveness claim. Indeed, the decisions rejecting the claim of ineffective assistance of trial counsel are entitled to deference under AEDPA. See Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision."), cert. denied, 544 U.S. 982 (2005). The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground two, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

---

[3] Although in his Notice Petitioner references Shelton v. Sec'y, Dep't of Corr., 802 F.Supp.2d 1289 (M.D. Fla. 2011) for the proposition that a per curiam affirmance is not an adjudication on the merits, this assertion has been soundly rejected by the Eleventh Circuit. See Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348, 1353 (11th Cir. 2012), reversing the decision of the Middle District of Florida. This Court is compelled to presume that the Fifth District Court of Appeal rendered an adjudication on the merits entitled to AEDPA deference.

federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 13-17.

Of note, at the suppression hearing, Detective Deloach testified that the dog had never alerted falsely, explaining that there were, of course, occasions where the dog would make a positive alert and no drugs would be found in a vehicle, but this was due to the presence of paraphernalia or drugs in the vehicle in the past. Ex. 1 at 395-96. Detective Deloach provided some background as to K-9 Max's training, stating that Max had been assigned to him since April of 2006, and the search was conducted on January 19, 2007. Id. at 387, 389. Detective Deloach attested that both he and the dog had gone through training. Id. at 397. Most of the training was done through the Sheriff's Office. Id. at 398. Detective Deloach described Max's training as "a passive alert." Id. at 392. Finally, there was testimony that in this instance, Max alerted at both vehicles, and methamphetamine was found in both vehicles. Id. at 376, 393.

Deference is due to the decisions of the state courts. Petitioner is not entitled to habeas relief on ground two.

### VI.  Ground Three

In his third and final ground, Petitioner raises a Sixth Amendment claim, alleging the ineffective assistance of counsel for failure to argue at the suppression hearing that Petitioner's truck was equipped with daytime running lights (DRL) which are

automatically engaged whenever the engine is on. This claim was raised in a post-conviction motion. The trial court considered Petitioner's claim that "Trial Counsel should have argued that the Defendant's daytime running lamps were illuminated instead of his headlights/taillights being turned on a the time of his traffic stop." Ex. 19 at 104, page 2. The court applied the standard of review set forth in Strickland. Id. It held:

> After review of the transcripts, it is clear that witness Deputy Anton Boals and witness Homer Deloach testified that the headlights were on and Boals testified that the taillights were off. (See **Appendix B**, Motion to Suppress Transcripts, Pages 17-50 and Page 86). The Court agrees with the State that the case Andrews v. State, 540 So.2d 210 (Fla. 4 the [sic] DCA 1989) was discussed in detail at the Motion hearing. In Andrews, the Court dealt specifically with the issue of the requirement for taillights to properly work if the headlights are turned on. Based on this argument and other arguments made surrounding whether there was sufficient probable cause for the stop, it appears that had Trial counsel made the argument regarding the "running lamps", the outcome of the proceeding would not likely have been any different. Thus, the second prong of Strickland would have not been met and this Ground should be summarily denied as well.

Ex. 19, at 104, page 4. This decision was per curiam affirmed by the Fifth District Court of Appeal. Ex. 28.

The decisions of the state trial and appellate courts are entitled to deference under AEDPA. The adjudications of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United

States Supreme Court. Therefore, Petitioner is not entitled to relief on ground three of the Petition, a claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the alternative, this claim has no merit. See Response at 17. The testimony from the suppression hearing was that the headlights were on, but the taillights were not on. Ex. 1 at 334, 362. It was confirmed, by inspection, that the taillights were inoperative.[4] Id. at 337. Finally, the statute at issue concerns head lamps or auxiliary driving lamps, not daytime running lights. Fla. Stat. § 316.221(2).

### VII.   Certificate of Appealability

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable

---

[4] Apparently there was a battery connected to the taillights, but the taillights were inoperable. Ex. 1 at 356.

jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of November, 2012.

ROY B. DALTON, JR.
United States District Judge

sa 11/13
c:
Gerald Boyd
Ass't A.G. (Compton)